21-2939
*Oakley v. MSG Networks*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of May, two thousand twenty-three.

PRESENT:

> GUIDO CALABRESI,
> RICHARD C. WESLEY,
> BETH ROBINSON,
> > *Circuit Judges*.

_____

CHARLES OAKLEY,

> *Plaintiff-Appellant*,

> v.                                                                   No. 21-2939

JAMES DOLAN, IN HIS INDIVIDUAL CAPACITY, IN HIS PROFESSIONAL CAPACITY, MSG NETWORKS, INC., MADISON SQUARE GARDEN COMPANY, MSG SPORTS & ENTERTAINMENT, LLC,

> *Defendants-Appellees*.

_____

| | |
|---|---|
| FOR APPELLANT: | DOUGLAS H. WIGDOR, Wigdor LLP, New York, NY (Renan F. Varghese, Wigdor LLP, New York, NY; Nelson A. Boxer, Nelson Andrew Boxer, *on the brief*). |
| FOR APPELLEES: | RANDY M. MASTRO (Akiva Shapiro, Declan T. Conroy, Alexandra Perloff-Giles, *on the brief*), Gibson, Dunn & Crutcher LLP, New York, NY. |

Appeal from an order of the United States District Court for the Southern District of New York (Sullivan, *Judge*).[1]

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order entered on November 22, 2021, is **VACATED** and the case **REMANDED** for further proceedings consistent with this Order.

Plaintiff-Appellant Charles Oakley appeals from the district court's grant of summary judgment in favor of MSG Defendants on his New York law claims of assault and battery arising from his ejection from Madison Square Garden (the "Garden") on February 8, 2017, while he was attending a New York Knicks

---

[1] Judge Richard J. Sullivan, United States Circuit Judge, sitting by designation. Judge Sullivan was a District Judge when Oakley's complaint was filed. Judge Sullivan retained the case when he became a Circuit Judge in October 2018. All references to the district court in this Order are to Judge Sullivan's rulings filed in the district court.

basketball game as a spectator.[2]  He also challenges the district court's denial of his motion to amend his complaint to add an additional defendant related to the assault and battery claims and to add an additional alleged instance of assault and battery during the interaction.  We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

The district court originally dismissed Oakley's claims under Federal Rule of Civil Procedure 12(b)(6), but this Court reversed the judgment and remanded for further proceedings on the assault and battery claims.  We concluded that Oakley's claim that "security guards used excessive force in accomplishing the removal" was sufficient, on its face, to survive dismissal.[3]  *Oakley v. Dolan*, 980 F.3d 279, 283 (2d Cir. 2020).  We noted that "[b]ecause of its intensely factual nature, the question of whether the use of force was reasonable under the circumstances is generally best left for a jury to decide." *Oakley*, 980 F.3d at 284.

---

[2] Oakley also brought claims of defamation and false imprisonment, as well as a claim for unlawful denial of public accommodation under the Americans with Disabilities Act and New York State Human Rights Law.  The district court dismissed those claims under Federal Rule of Civil Procedure 12(b)(6), and this Court affirmed the district court's order on appeal.  *See Oakley v. Dolan*, 833 F. App'x 896 (2d Cir. 2020).

[3] In quotations from caselaw and the parties' briefing, this order omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

On remand, and prior to discovery,[4] Defendants filed a motion for summary judgment based solely on video recordings of the February 8, 2017 incident that the MSG Defendants submitted. Based on the videos, the district court concluded that "[t]here is no interpretation of the video footage that could lead a reasonable jury to conclude that the degree of force used by MSG security guards to remove Oakley from the Garden was objectively unreasonable." *Oakley v. MSG Networks*, No. 17-cv-6903 (RJS), 2021 WL 5180229, at *6 (S.D.N.Y. Nov. 8, 2021).

We review a district court's grant of summary judgment without deference to the district court, examining the evidence in the light most favorable to, and drawing all reasonable inferences in favor of, the non-movant. *See Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 97 (2d Cir. 2020). However, we do not accept Plaintiff's facts to the extent that they are "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007). We review decisions to limit discovery for abuse of discretion. *See In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008). And, while we generally review a district court's denial of leave to amend an amended complaint for abuse of discretion, we

---

[4] Despite Oakley's opposition, the district court granted MSG Defendants' motion to stay discovery while their summary judgment motion was pending.

review *de novo* a denial based on futility. *See Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).

1. <u>Assault and Battery Claims</u>

Under New York law, a property owner has the right to withdraw a license to their premises; if, after the property owner affords the former licensee a reasonable opportunity to leave, the former licensee refuses to go, the property owner has the right to use reasonable force to eject the former licensee. *See Noonan v. Luther*, 206 N.Y. 105, 108 (1912).

At issue in this appeal is whether Oakley has proffered sufficient evidence to create a material dispute of fact as to "whether the security guards used excessive force in accomplishing [his] removal." *Oakley*, 2021 WL 5180229 at *4.

We begin with two general premises: First, "[i]f, as to the issue on which summary judgment is sought, there is *any* evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82–83 (2d Cir. 2004) (emphasis added). Second, generally, summary judgment should not be granted against a plaintiff who has not been afforded the chance to conduct discovery. *See Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be

5

granted against a plaintiff who has not been afforded the opportunity to conduct discovery.").

Nevertheless, there may be times when video evidence is so conclusive that summary judgment is warranted, even in the face of contradictory statements or declarations by the non-moving party. *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). For example, where a videotape "blatantly contradict[s]" the remainder of the record, inferences drawn in the non-movant's favor would not be "justifiable." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Moreover, there may be cases in which a district court does not exceed its discretion in declining to allow requested discovery before awarding summary judgment. *See, e.g.*, *Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 795 (2d Cir. 1985) (explaining that a district court abuses its discretion only "when the discovery is so limited as to affect a party's substantial rights").

We conclude this case does not fall within these narrow exceptions to the general rules because the video evidence does not "blatantly contradict" Oakley's Rule 56 declaration and does not compel as a matter of law the

conclusion that the MSG Defendants' use of force was reasonable.  In addition, given the limitations of the video evidence in this case, limiting discovery may affect Oakley's substantial rights.  We reach these conclusions for several reasons.

First, we cannot confidently match up Oakley's affidavit testimony with the video record for the purpose of determining whether the latter "blatantly contradicts" the former.  In his declaration, Oakley testifies that immediately after he stood, he was grabbed and pulled backward by the security guards.  Once he was let go, he felt a security guard push him from behind.  The district court determined that the "initial" fall that Oakley was presumably describing was depicted in Exhibit 4 (hereinafter "Fan Video") at 0:13–0:14.

But a separate video records Oakley standing up while surrounded by security guards and falling to the side in a way that is not blatantly inconsistent with the description in his declaration.  *See* Exhibit 2.b (hereinafter "Stadium Video") at 8:16–8:23.  This excerpt from the Stadium Video apparently depicts events that occurred before the Fan Video begins.  Viewing the record in the light most favorable to Oakley, and giving him the benefit of all reasonable inferences, the record does not unequivocally support the conclusion that the incident

7

Oakley described in his declaration was that depicted in the Fan Video at 0:13. So a dispute of material fact exists on that question.

Moreover, if Oakley's declaration describes the incident depicted on the Stadium Video at 8:16-8:23, then the record does not, as the district court suggested, reflect as a matter of law that the security guards only resorted to force *after* Oakley physically escalated the situation.

Additionally, the Stadium Video, which is the only video that captures the initial encounter between Oakley and the MSG security guards, has a low frame rate and, as a result, produces a choppy and degraded video quality that does not depict a continuous flow of activity. Nor does it include sound. As a consequence, it does not record the initial conversation between Oakley and the MSG security guards, and it is difficult to see clearly what happened. Authentic video recordings can in some cases clearly establish material facts, but in some cases "[v]ideo evidence may be subject to physical limitations because of lighting, because of image resolution, because of the limited scope of a camera frame, and because of optical distortion that depends in part on the distance and angle from which a video is captured." *Gibbs v. City of Bridgeport*, No. 3:16-cv-635 (JAM), 2018 WL 4119588, at *7 (D. Conn. Aug. 29, 2018). In this case, the only video record of Oakley's initial encounter with the security guards does not

8

compel the conclusions that Oakley was provided a reasonable opportunity to leave the Garden and that any force used by the guards during that initial encounter was reasonable. *See* Stadium Video at 7:56–8:23.

Plus, the video record shows Oakley falling two other times after that initial encounter. *See* Fan Video at 0:13–0:14 and at 1:10; Stadium Video at 8:41–8:42 and at 9:36–9:40. None of these videos clearly show Oakley's feet and lower legs, and thus do not unequivocally establish that Oakley merely lost his footing.

Finally, once a jury sorts out *what* exactly happened, it must make a determination as to whether the force used to eject Oakley was reasonable. Given material disputes about whether and when the security guards pushed Oakley, we cannot conclude as a matter of law that no reasonable jury could conclude that the defendants gave Oakley a reasonable opportunity to depart, and that they then used only reasonable force.

Moreover, additional discovery could have yielded additional videos showing other camera angles, as well as helpful eyewitness testimony to overcome the limitations in the video record and give context. Given the fact-dependent nature of Oakley's claims, as well as the limitations of the video exhibits, the district court exceeded its discretion in concluding that Oakley's

9

request for additional discovery was too speculative.  See Oakley, 2021 WL 5180229 at *7.

    2.    <u>Request for Leave to File Another Amended Complaint</u>

Oakley requested permission to add James Dolan as a defendant on the remaining assault and battery claims under either a concerted action theory or an aiding and abetting theory of liability.  Because the district court granted summary judgment to MSG Defendants on the assault and battery claims, the court determined that it would be futile to add Dolan as a defendant on derivative theories of liability because both theories "require that the underlying tort—assault and battery—actually occurred."  Oakley, 2021 WL 5180229 at *8.  Given our reversal of the district court's summary judgment for the MSG Defendants, the district court's futility analysis is no longer applicable.  Oakley also sought to add an allegation to his complaint that he was pushed or pulled backward when he first rose from his seat, just after the MSG security guards approached him.  The district court did not address this argument in its decision.  It should do so on remand.

On appeal, both parties have briefed the question whether the request for leave to file a second amended complaint should be denied on alternate grounds, but the district court has not addressed these arguments in the first instance.

10

Accordingly, we remand for the district court, "as an exercise of its broad discretion concerning the pleadings," to consider Oakley's request for leave to amend in the first instance. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244–45 (2d Cir. 2007).

\* \* \*

For the above reasons, the district court's grant of summary judgment is **VACATED**, and this case is **REMANDED** for further proceedings consistent with this Order.

        FOR THE COURT:
        Catherine O'Hagan Wolfe, Clerk of Court